# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

IN RE: THE THIRTY-FIFTH STATEWIDE : No. 137 MM 2014
INVESTIGATING GRAND JURY :
:
:
:
PETITION OF: OFFICE OF ATTORNEY :
GENERAL :

## ORDER

**PER CURIAM**

    **AND NOW**, this 26th day of August, 2015, upon the request of the supervising judge for removal of the seal from all matters involving the 35th Statewide Investigating Grand Jury and the investigation of Attorney General Kathleen Kane which have been lodged in this Court, save for grand jury materials such as testimony, exhibits, and <u>in camera</u> proceedings, and based on the supervising judge's assurance that there are no present grand jury secrecy concerns relative to such unsealing, it is hereby **ORDERED** that the seal is lifted, in part, upon such terms.

Filed 09/19/2014 Supreme Court Middle District
137 MM 2014

**UNSEALED PER ORDER OF
THE COURT DATED
AUGUST 26, 2015**

IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

IN RE: THE THIRTY-FIFTH STATEWIDE      :
INVESTIGATING GRAND JURY               :          No. ___ MM 2014
                                       :
PETITION OF:                           :          **FILED UNDER SEAL**
OFFICE OF ATTORNEY GENERAL             :

---

APPLICATION OF THE OFFICE OF ATTORNEY GENERAL FOR
SPECIAL RELIEF PURSUANT TO 42 Pa.C.S. §§ 502, 726, Pa.R.A.P. 3309

---

TO THE HONORABLE CHIEF JUSTICE AND JUSTICES OF THE SUPREME COURT OF PENNSYLVANIA:

AND NOW, comes the Pennsylvania Office of Attorney General by Kathleen G. Kane, Attorney General of the Commonwealth of Pennsylvania, and James P. Barker, Chief Deputy Attorney General, who files this Application of the Office of Attorney General for Special Relief pursuant to 42 Pa.C.S. §§ 502, 726, Pa.R.A.P. 3309, and in support thereof avers as follows:

**I. PARTIES**

1.     Petitioner is the Office of Attorney General of the Commonwealth of Pennsylvania (OAG) by Kathleen Kane, Attorney General, and her appointed deputies.

2. For the reasons recited below, OAG is unaware of the identity of any Respondent but is serving the Special Prosecutor and the Supervising Judge as potentially interested parties, as well as the Clerk of Court of Montgomery County. *See* Pa.R.A.P. 3309(a).

## II. JURISDICTION

3. The Court has jurisdiction under Section 726 of the Judicial Code, which provides:

> Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

42 Pa.C.S. § 726. Reasons for exercising this discretionary jurisdiction are discussed below.

## III. BACKGROUND

4. On June 6, 2014, the *Philadelphia Daily News* published an article, a copy of the on-line version of which is attached as Appendix A, describing a review of a prior Grand Jury investigation by OAG.

5. The Honorable William R. Carpenter, Supervising Judge of the Thirty-Fifth Statewide Investigating Grand Jury, appointed a Special Prosecutor to investigate, using the resources of the Thirty-Fifth Statewide Investigating Grand Jury.

6. OAG has cooperated with the Special Prosecutor's investigation.

7. On August 26, 2014, with no prior notice to OAG, no allegations contained therein, and no opportunity for OAG to respond to any allegations of misconduct, the Supervising Judge issued an Order under the authority of 18 Pa.C.S. § 4954 (relating to protective orders), identified hereinafter as the "Protective Order," a copy of which (along with a related Sealing Order) is attached hereto as Appendix B.

2

8. OAG moved for reconsideration of the Protective Order and argument on the motion was conducted on September 16, 2014.

9. At the time of argument, OAG was informed for the first time that an *ex parte, in camera* "hearing" had been conducted and that the Protective Order against the government agency had issued as a result.

10. On September 17, 2014, the Supervising Judge issued an Order granting in part the OAG's motion for reconsideration, granting a hearing on allegations of obstruction, witness intimidation, and/or retaliation, but not establishing a date for said hearing. A copy of this Order and related Sealing Order is attached hereto as Appendix C.

11. The Order of September 17, 2014, did not specify any person or conduct that is at issue, reciting only, "The subject of the hearing is allegations of obstruction, witness intimidation, and/or retaliation." Order of Court dated September 17, 2014, at 1.

12. Also on September 17, 2014, the Supervising Judge issued a second Order granting in part the OAG's motion for reconsideration, amending Paragraphs 2 and 5 of the original Protective Order to make the following persons subject to Paragraphs 2 and 5:

1. Any person who has been sworn to Grand Jury secrecy;
2. Any person who has or had access to any Grand Jury information;
3. Any person associated with the J. Whyatt Mondesire proceedings and investigation

Order of Court dated September 17, 2014 (second such Order), at 1. Presently, the Protective Order affects, as in place, hundreds of employees of a government agency, including the Attorney General.

13. For the reasons detailed below, OAG respectfully requests that this Honorable Court enter an Order vacating the Protective Order, at least to the extent that the OAG and/or any person of the persons identified in the second Order of September 17, 2014, are prohibited from

acts that may be considered to constitute obstruction, intimidation, or retaliation against a witness summoned by the Grand Jury, the identities of whom OAG is ordered not to have knowledge.

## IV. TERMS OF THE PROTECTIVE ORDER

14. As noted, on August 27, 2014, the Supervising Judge issued the Protective Order pursuant to 18 Pa.C.S. §4954, which permits "[a]ny court with jurisdiction over any criminal matter" to issue protective orders "after a hearing and in its discretion, upon substantial evidence."

15. The Protective Order directs OAG to refrain from involvement in or access to the investigative efforts of the Special Prosecutor. Protective Order at 1 ¶ 2.

16. The Protective Order, as originally issued, also requires *all* OAG employees, approximately 800 people, to refrain from engaging in or soliciting obstruction, intimidation or retaliation against any witness summoned by the Grand Jury in the Special Prosecutor's investigation. Protective Order at 1 ¶ 2.

17. The Protective Order cautions that "any person," including OAG employees, who engages in conduct constituting obstruction, intimidation, or retaliation may be prosecuted under 18 Pa.C.S. § 4955 and any other applicable provision of the Crimes Code. Protective Order at 2 ¶ 5.

18. The Order prohibits the Office from receiving transcripts of testimony before the Grand Jury and bars employees of the Office from access to transcripts, documents, or other information related to the Special Prosecutor's investigation. Protective Order at 1 ¶ 3, 2 ¶ 4.

4

19. The Special Prosecutor was directed to serve the Protective Order on OAG, Protective Order at 2 ¶ 6, although the Protective Order did not provide for service on all of the persons subject to its terms.

20. Finally the Order prohibits the disclosure of its contents to anyone outside OAG, under penalty of contempt.

21. As amended by the Orders of September 17, 2014, the Protective Order now allows for the scheduling of a hearing on facts as to which there already have been findings, pursuant to an *ex parte* hearing as to which OAG was not provided its due process rights of notice and representation, and has "limited" the number of persons subject to the Protective Order to any person subject to Grand Jury secrecy, any person who has or had access to Grand Jury information, and any person involved in a specified investigation. The people covered by the Protective Order still would number in the hundreds.

## V. ABUSE OF DISCRETION IN ISSUANCE OF THE PROTECTIVE ORDER

22. The statutory provision on which the Supervising Judge relied reads as follows:

Any court with jurisdiction over any criminal matter may, after a hearing and in its discretion, upon substantial evidence, which may include hearsay or the declaration of the prosecutor that a witness or victim has been intimidated or is reasonably likely to be intimidated, issue protective orders, including, but not limited to, the following:

(1) An order that a defendant not violate any provision of this subchapter or section 2709 (relating to harassment) or 2709.1 (relating to stalking).

(2) An order that a person other than the defendant, including, but not limited to, a subpoenaed witness, not violate any provision of this subchapter.

(3) An order that any person described in paragraph (1) or (2) maintain a prescribed geographic distance from any specified witness or victim.

(4) An order that any person described in paragraph (1) or (2) have no communication whatsoever with any specified witness or victim, except through an attorney under such reasonable restrictions as the court may impose.

5

18 Pa.C.S. § 4954.

23. By its terms, § 4954 grants to the court with jurisdiction the discretion to enter a protective order and to decide the terms of a protective order, such that review of a protective order would be for an abuse of discretion. *See Commonwealth v. Sandusky*, 70 A.3d 886, 897 n.9 (Pa. Super. 2013).

24. "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Alicia*, 92 A.3d 753, 760 (Pa. 2014) (citation omitted).

25. To the extent that this case presents a question of law, such as the requirement of a hearing, the Court's standard of review is *de novo* and the scope of review is plenary. *Id.*

26. As noted, OAG was not provided with notice that there had been an allegation of misconduct and/or request for issuance of the Protective Order.

27. To date, despite the filing of a motion for reconsideration, argument on that motion on September 16, 2014, and issuance of the Orders amending the Protective Order, OAG is unaware of the precise nature of any allegation of misconduct giving rise to the issuance of the Protective Order.

28. After repeated requests by OAG, the Supervising Judge refused to even inform OAG of the allegations that form the basis of the Protective Order or the person or persons who allegedly committed the unknown acts.

29. As such, OAG has been left to speculate that the incident giving rise to the Protective Order was an encounter between two witnesses who testified before the Grand Jury and agents employed by OAG.

6

30. More specifically, because OAG was responsible for issuing subpoenas to witnesses summoned before the Grand Jury, certain members of the Criminal Law Division were aware that two former employees of OAG, Frank G. Fina, Esquire, and E. Marc Costanzo, Esquire, testified before the Grand Jury relating to this investigation on August 26, 2014.

31. The Grand Jury suite is located in the same building and on the same floor as the Norristown offices of OAG, including agents, attorneys, and support staff employed within the Bureau of Narcotics Investigations, the Organized Crime Section, the Criminal Prosecutions Section, and other units of OAG.

32. OAG has been informed that on the day of their testimony Attorneys Fina and Costanzo encountered Special Agent Michael A. Miletto on their way to the Grand Jury room.

33. Agent Miletto was the lead investigator in the investigation that is the subject of the Special Prosecutor's inquiry and he previously testified before the Grand Jury.

34. The precise nature of the encounter between Agent Miletto and Attorneys Fina and Costanzo is unclear, but it appears to have given rise to the Protective Order because the Protective Order was issued the next day; again, OAG can only surmise because the Supervising Judge has refused to reveal the nature of the incident or who was involved.

35. Agent Miletto denies that he engaged in any act of obstruction, intimidation, or retaliation on August 26, 2014, or that any act of his could reasonably be construed as such; to the contrary, according to Agent Miletto, he and at least one other agent believed that Attorney Fina was trying to intimidate Agent Miletto.

36. Agent Miletto indicates that he has multiple witnesses to his actions and the actions of Attorney Fina on August 26, 2014.

7

37. The issuance of the Protective Order with no prior notice to Agent Miletto, OAG, or the approximately 800 persons subject to the Protective Order was an abuse of discretion.

38. The Special Prosecutor has indicated that another OAG agent entered a room occupied by the Special Prosecutor, Attorney Fina, and Attorney Costanzo, stared in a hostile manner at Attorney Fina and Attorney Costanzo, and demanded to speak to the Special Prosecutor.

39. According to the Special Prosecutor, the agent told him, in strong language, that the proceeding was ridiculous and that Attorneys Fina and Costanzo could not be trusted.

40. As a matter of fundamental procedural due process, an individual may not be deprived of a constitutionally protected interest without a hearing, and a hearing requires notice and an opportunity to be heard; it follows that the opportunity to be heard must be at a meaningful time and in a meaningful manner. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Commonwealth v. Maldonado*, 838 A.2d 710, 714 (Pa. 2003).

41. OAG and its employees, including the agents described above, have never been heard in any way, much less in a meaningful time and manner, with respect to issuance of the Protective Order.

42. There is no reasonable basis for concluding that every employee of OAG is likely to engage in intimidating activity or retaliatory conduct based on testimony before the Grand Jury, especially since (a) the vast majority of OAG employees have no contact with the Grand Jury and would be completely unaware of the Special Prosecutor's investigation, (b) even among those employees who have contact with the Grand Jury, most would be completely unaware of the Special Prosecutor's investigation (as just one example, it is difficult to imagine that a Medicaid Fraud investigator in Pittsburgh would have any knowledge of, or interest in, a "leak"

investigation involving the Norristown Grand Jury), and (c) there have been no reports of any contact with witnesses apart from the incidents involving the agents.

43. Contact between the witnesses and the agents cannot reasonably constitute intimidation given that OAG agents work on the premises and especially since both Attorney Fina and Attorney Costanzo are career prosecutors who have worked with, directed and supervised agents on many occasions.

44. The Protective Order constitutes an abuse of discretion because OAG was never given notice and no hearing, as required to satisfy basic due process, was conducted.

45. The Protective Order constitutes an abuse of discretion because the individual employees subject to the Protective Order were never given notice and no hearing, as required to satisfy basic due process, was conducted.

46. Assuming that the incidents involving Attorney Fina and the Agents are the basis for the issuance of the Protective Order, the Protective Order constitutes an abuse of discretion because the conduct of the agents cannot reasonably be construed as an act of intimidation, obstruction, or retaliation.

47. Assuming that the incidents involving Attorney Fina and the agents are the basis for the issuance of the Protective Order, the Protective Order constitutes an abuse of discretion because the conduct of the agents cannot reasonably be attributed to every employee of OAG.

48. Assuming that the incidents involving Attorney Fina and the agents are the basis for the issuance of the Protective Order, the Protective Order constitutes an abuse of discretion because there is no evidence that the agents' supervisors were aware that they would engage in intimidation, obstruction, or retaliation, or that they had engaged in such conduct in the past, and so the conduct of the agents cannot reasonably be attributed to OAG as a whole.

9

49. The Protective Order constitutes an abuse of discretion because the scope of the Protective Order, in terms of both the persons subject to the Order and the conduct covered by the Order, is far broader than necessary to protect any witness before the Grand Jury.

50. The Protective Order constitutes an abuse of discretion because persons who violate the Order are subjected to the jurisdiction of the Court for purposes of a prosecution under 18 Pa.C.S. § 4955, which permits, *inter alia*, prosecution for other, substantive offenses and for contempt of court, and allows for a warrantless arrest, 18 Pa.C.S. § 4955(a)(1), (a)(2), (b), and there is no substantial evidence supporting the exercise of such jurisdiction.

## VI. EXERCISE OF JURISDICTION

51. OAG requests that the Court invoke its jurisdiction under 42 Pa.C.S. 726, which allows the Court to assume plenary jurisdiction in any matter pending before any court involving an issue of immediate public importance and enter a final order or otherwise cause right and justice to be done.

52. The Protective Order is a matter of public importance because a governmental agency with law enforcement duties and other responsibilities important to the public is subject to the terms of the Protective Order and limited in its ability to carry out its functions.

53. The Protective Order is a matter of public importance because OAG is handicapped thereby in its role as a law enforcement agency or otherwise because all witnesses are, according to the Protective Order, shielded from OAG any act undertaken by OAG involving any witness in the Special Prosecutor's investigation may be construed as an act of intimidation, obstruction, or retaliation, such as: (a) reviewing investigations involving Attorney Fina, Attorney Costanzo, or the former Deputy Attorney General to whom the underlying investigation was assigned; (b) personnel matters involving any of those persons or other,

10

unknown witnesses; (c) personnel actions involving any of the various OAG employees who have testified before the Grand Jury in the Special Prosecutor's investigation; or (d) criminal or civil investigations into any persons, known or unknown, under the Protective Order relating to ¶¶ 1, 3, 4, including for actions unrelated to the Special Prosecutor's investigation.

54. Because the Protective Order was effective immediately, the public importance of the issues presented herein also is immediate.

55. Appeal in the ordinary manner is not feasible because most of the persons affected by the Protective Order are not even aware of its existence.

56. Appeal in the ordinary manner is not feasible in that the Protective Order affects hundreds of individuals.

## VII. CONCLUSION

WHEREFORE, the Pennsylvania Office of Attorney General, through the Attorney General and undersigned counsel, respectfully requests that this Honorable Court enter an Order granting this Application for Special Relief and either vacating Paragraphs 2 and 5 of the Protective Order or remanding the case to the Supervising Judge for a hearing consistent with 18 Pa.C.S. § 4954, or such other relief as the Court may deem appropriate.

Respectfully submitted,

KATHLEEN G. KANE
Attorney General

LAWRENCE M. CHERBA
Executive Deputy Attorney General
Director, Criminal Law Division

By:

JAMES P. BARKER
Chief Deputy Attorney General
Attorney No. 67315
jbarker@attorneygeneral.gov

OFFICE OF ATTORNEY GENERAL
Criminal Law Division
Appeals and Legal Services Section
16th Floor-Strawberry Square
Harrisburg, PA 17120
(717) 705-0098
(Fax) (717) 783-5431

Date: September 19, 2014

12

## VERIFICATION

The facts recited in the foregoing Commonwealth's Answer to Petition for Review are true and correct to the best of my knowledge and belief. This statement is made with knowledge that a false statement is punishable by law under 18 Pa. C.S. § 4904(b).

By: _James P. Barker_
JAMES P. BARKER
**Chief Deputy Attorney General**
**Attorney No. 67315**

**OFFICE OF ATTORNEY GENERAL**
**Criminal Law Division**
**Appeals & Legal Services Section**
**16th Floor—Strawberry Square**
**Harrisburg, PA 17120**
**(717) 705-0098**

**Date: September 19, 2014**

13

THIS PAGE INTENTIONALLY LEFT BLANK

Friday, September 19, 2014                                                 Member Login: **Sign In**  **Register**  f ⬚ ⬚

72° John Bolaris' Forecast »
        Philadelphia, PA

**philly●com**

Search          Subr:  The Inquirer DAILY NEWS

🏠 | News | Sports | Entertainment | Business | Opinion | Food | Lifestyle | Health | More

**BREAKING NEWS VIDEO VOICES/BLOGS PHILADELPHIA NEW JERSEY POLITICS EDUCATION OPINION OBITUARIES NATION/WORLD WEATHER TRAFFIC LOTTERY**

# State A.G. probed Philly NAACP leader Mondesire's finances 5 years ago

[ Share ] [ Tweet ] [ ] [ Reddit · Email ]



*J. Whyatt Mondesire, former President of the Philadelphia Chapter of the NAACP on August 10, 2009. (David Maialetti / Staff Photographer)*

**CHRIS BRENNAN,** *Daily News Staff Writer brennac@phillynews.com, 215-854-5973*

LAST UPDATED: Thursday, June 5, 2014, 9:45 PM

 STATE ATTORNEY General Kathleen Kane is reviewing a 2009 grand-jury investigation of J. Whyatt Mondesire, former head of the NAACP in Philadelphia, and one of his employees, according to documents obtained by the *Daily News*.

Mondesire's employee, Harriet Garrett, and her daughter pleaded guilty in 2010 to stealing nearly $220,000 in state grant money for a job-training program. Garrett was sentenced to a minimum of six months in jail and ordered to pay restitution. Her daughter got 18 months' probation.

A 2009 memo written by then-Deputy Attorney General William Davis Jr. says investigators "uncovered what appeared to be questionable spending" of state money by Mondesire.

Advertise Here

*Latest News Video*

*Most Viewed News Stories:*

 High school coach resigns in alleged gay-attack case

 Schuylkill Banks boardwalk opens soon

 Pair fight to save NE Philly home after son's arrest

 Odd N.J. divorce case has NFL links

Schools in Poconos closed for 3rd day

Kane, a Democrat, is now trying to determine what happened with the Mondesire investigation. Gov. Corbett, a Republican, was the attorney general at the time.



MORE COVERAGE
**Police probe shooting at upper Montco complex**
**Christie chief of staff subpoenaed**

Mondesire, 64, says he was never questioned and denies any financial wrongdoing.

The 2009 Davis memo detailed for his bosses what had been uncovered about Mondesire and Garrett, who worked at the *Philadelphia Sunday Sun*, a weekly newspaper Mondesire publishes.

A nonprofit called Next Generation Community Development Corp., which is operated by Mondesire, held a state-government grant for a jobs-training program in 2004 and 2005, but handed it off to Garrett, who ran another nonprofit called Creative Urban Education Systems, or CUES, according to the Davis memo.

Mondesire was listed as chairman of the CUES board, the memo noted, while Garrett served as the treasurer for Next Generation's board.

Davis wrote his memo to then-Chief Deputy Attorney General Frank Fina and then-Senior Deputy Attorney General E. Marc Costanzo.

Corbett, as attorney general, named Fina in 2006 to head a new public-corruption unit and Costanzo to work on cases for the unit in the Philadelphia region.

Fina and Costanzo now work in a similar unit for District Attorney Seth Williams.

In the memo, Davis wrote:

* Next Generation's bank-account records, obtained with a grand-jury subpoena, showed deposits of $1.3 million in government grants in a one-year period.

Another $521,000 in the account came from political campaigns, rent payments and the intermingling of money from the *Sunday Sun*, which is owned and operated by Mondesire, the memo said.

* Next Generation paid $2,273 to the Philadelphia Club, a private and exclusive club in Center City.

* Next Generation spent "tens of thousands," writing checks to pay Mondesire's American Express bill for "clothes, food, lodging gas and entertainment" and a loan from Mellon Bank. There were also checks written to Mondesire and to "cash."

* Next Generation wrote checks for $169,960 to Charles and Claudia Tasco and their company, C&C Construction. (Charles Tasco is the son of City Councilwoman Marian

## Travel Deals



$140 & up -- Downtown D.C. Hotel Sale thru Fall, 20% Off

See all travel deals »

LISTED BY **TRAVELZOO**

## Weekly Circulars



**RADIOSHACK:**
Hot Weekly Deals!
2 DAYS LEFT



**TARGET USA:**
Get The Best Of Everything
EXPIRES TOMORROW

### Also on Philly.com

BUSINESS:

Unemployment rises in Del. Valley

HEALTH:

Does Philly have a doctor shortage?

SPORTS:

Giroux injured at Flyers camp

ENTERTAINMENT:

Tina Fey talks 'This Is Where I Leave You'

FOOD:

Volvér drops prices, eliminates ticket sales

JOBS:

5 signs it's time to look for a new job

### Stay Connected

Get the latest Philly.com Daily Headlines newsletter delivered to your email. Sign up now!

Enter email address to sign up

Already a philly.com member?  Yes  No

See More Circulars »

Tasco, a friend and political ally of Mondesire's for more than three decades.)

* $6,431 in CUES money was given to Mondesire for what Garrett called consulting. That type of expense was not allowed, according to the rules of the grant.

* In "various correspondence" between Garrett and Mondesire discovered by investigators, she questioned payments of more than $70,000 he made to Claudia Tasco.

* CUES paid $1,099 for health insurance for Mondesire.

* Davis wanted to question Mondesire - and possibly subpoena him for sworn grand-jury testimony - about Garrett, CUES and Next Generation.



A DAILY NEWS ORIGINAL   DAILY NEWS

FOR THE COMPLETE DAILY NEWS EXPERIENCE,

JOIN OR LOGIN NOW >

### Never questioned

Mondesire, a former *Inquirer* reporter who served as the top aide to the late U.S. Rep. Bill Gray, said no one from the A.G.'s Office ever questioned him.

"We didn't use any money for personal gain," Mondesire said.

He said that he has not seen the A.G. Office's documents and twice declined an offer from the *Daily News* to review them.

Mondesire said C&C Construction worked on four properties, including the NAACP headquarters and his newspaper office, where the Next Generation non-profit is also located.

"We bought supplies with my American Express card for construction," he said.

"They never asked me a single question back in 2009. We rehabbed the buildings. We spent money buying stuff for the buildings, construction and paying off developers."

Garrett declined to comment about the investigations. Her daughter did not respond to requests for comment.

The May 2010 news release about Garrett's arrest featured Corbett laying out the charges.

Corbett did not respond this week to two questions: Was he briefed on the Mondesire investigation and did he play a role in deciding what happened with that probe?

Mondesire was suspended by the NAACP's national headquarters in April after he feuded publicly with board members about the finances of the local chapter and Next Generation.

Those board members - Sid Booker, Donald "Ducky" Birts and the Rev. Elisha Morris - also were suspended.

Booker and Morris, who say they are still Next Generation board members, are now asking a Common Pleas judge to

force Mondesire to show them the nonprofit's financial records.

As a judge considers that request, Kane's staff is reviewing what became of the 2009 Mondesire probe.

David Peifer, who heads the A.G.'s Bureau of Special Investigations, on March 21 interviewed Michael Miletto, the special agent who investigated Garrett and Mondesire.

The *Daily News* obtained a transcript of that taped interview.

Miletto told Peifer that he subpoenaed Next Generation's bank account, the transcript shows.

"When I did that, I found that there was a whole bunch of money that appeared to me to be donations to the NAACP, not [Mondesire], and they were going into Next Generation's account and they were being used for [Mondesire's] lifestyle - much of it," Miletto told Peifer.

Miletto said he was taken off the case after Fina and Costanzo were told about the probe, according to the transcript.

Miletto said "criminal activity was just ignored" after that. He added that two accountants who had worked for Mondesire had provided taped statements, with one asking for immunity and the other asking for protection.

Fina and Costanzo declined to comment about the Mondesire investigation, citing the secrecy of grand-jury proceedings.

Davis, now in private practice, also declined to comment, citing the same restriction.

Miletto, who still works for the A.G.'s office, also declined to comment.

Peifer referred questions to Kane's communications staff.

J.J. Abbott, a spokesman for Kane, declined to comment.

### The Kane-Fina feud

Fina and Costanzo have a complicated and controversial relationship with Kane.

Kane criticized Corbett's tenure as attorney general when she ran for office in 2012, specifically targeting the Penn State child-abuse scandal that sent former assistant football coach Jerry Sandusky to prison.

Kane's staff is now conducting an extensive review of that investigation.

Fina led the Sandusky probe.

Kane, on Feb. 5, issued a statement noting that her office's Sandusky review had been underway for one year, adding that delays in the undertaking "will be described in more detail when the report is made public."

A month later, the *Inquirer* reported that Kane declined to pursue an investigation previously led by Fina and Costanzo, starting in 2010, that used Philadelphia lobbyist Tyron Ali as a confidential informant to tape conversations with four Philly state representatives and a former Traffic Court judge. On the tapes, the representatives and judge accept cash or gifts from Ali.

Kane has said Fina dropped 2,033 criminal counts against Ali, who had been charged with stealing $430,000 from a state program, 24 days before she was sworn into office.

She said that "extraordinarily lenient" deal "crippled the chance of this case succeeding in prosecution."

Fina, in a letter published by the *Inquirer* a week after the first story ran, called on Kane to explain her decision.

The *Inquirer* also published a letter that day from Fina's boss, Williams, critical of Kane.

Kane eventually turned over the Ali case file to Williams, who is now examining whether charges can be brought against the four representatives and the Traffic Court judge, who is currently on trial in an unrelated federal corruption case.

On Twitter: @ChrisBrennanDN

Blog: ph.ly/PhillyClout.com

CHRIS BRENNAN
*Daily News Staff Writer brennac@phillynews.com,*
*215-854-5973*

| Share | Tweet | | Reddit | Email | Reprints & Permissions » |

### Share this story with friends who would like it.

We recommend which of your friends would enjoy this story.

MORE FROM THE WEB

Cheerleaders From NFL Week 2 You Have To See *(RantSports)*

5 Things You Should Never Say at Work *(Monster)*

Dwyane Wade's Wives, Girlfriends All Wrapped Up In 15 Pictures *(RantSports)*

3 Things You Should Never Do When Negotiating Your Salary *(Monster)*

Investing 101: What is a Hedge Fund? *(Managed Funds Association)*

Wal-Mart spokesman resigns over lie on resume *(Fortune)*

MORE FROM PHILLY.COM

DeSean Jackson home burglary remains 'open investigation,' Philly cops say

Missing Children's Garden director found without explanation

3 hurt in Kensington warehouse blaze

Living in truth means being on guard

Disruptive passenger pleads guilty to interfering with flight crew

'LOVE' artist Indiana doesn't show at celebration

philly**com

**News | Sports | Entertainment | Business |
Food | Lifestyle | Health**

*Classifieds:*

**Jobs | Cars | Real Estate | Rentals |
Marketplace | Celebrations | Print Offers
Online | Weekly Circulars**

*Site Services:*

**Advertise on Philly.com | Rates and Specs |
Mobile Site | Apps**

The Inquirer

**The Inquirer Digital
Edition**

**Subscriber Services**

**Subscribe**

**Newspapers in Education**

DAILY NEWS

**Daily News Digital Edition**

**Subscriber Services**

**Subscribe**

*Partners:*

**Philly DealYo**

**Parade Magazine**

About Philly.com | Contact Us | Terms of Use & Privacy Statement | Copyright 2014

© Copyright 2014 Interstate General Media, LLC

THIS PAGE INTENTIONALLY LEFT BLANK

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:                                         : SUPREME COURT OF PENNSYLVANIA
                                               : NO. 176 M.D. MISC. DKT. 2012
THE THIRTY-FIVE STATEWIDE                      :
                                               : MONTGOMERY COUNTY COMMON PLEAS
INVESTIGATING GRAND JURY                       : M.D. 1424-2014
                                               :
                                               : NOTICE NO. 123

## SEALING ORDER

AND NOW, this 27th day of August, 2014, it is hereby ORDERED, that the

attached Order of August 27, 2014 be filed under seal with the Clerk of Courts of

Montgomery County until further Order of this Court.


**BY THE COURT:**


**WILLIAM R. CARPENTER,**          **J.**
**Supervising Judge**

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:

THE THIRTY-FIVE STATEWIDE

INVESTIGATING GRAND JURY

: SUPREME COURT OF PENNSYLVANIA
: NO. 176 M.D. MISC DKT. 2012
:
: MONTGOMERY COUNTY COMMON PLEAS
: M.D. 1424-2014
:
: NOTICE NO. 123

## ORDER

AND NOW, this 27th day of August, 2014, it is hereby ORDERED, pursuant to 18 Pa.C.S.§ 4954 (relating to protective orders), that:

1. The Office of the Attorney General, except upon specific authorization by this Court or the Special Prosecutor, shall refrain from any involvement in, or access to, the investigative efforts of the Special Prosecutor.

2. Employees of the Office of the Attorney General shall refrain from engaging in, or soliciting, any act of obstruction, intimidation or retaliation against any witness summoned by the Grand Jury in the Special Prosecutor's investigation.

3. All transcripts of Grand Jury testimony shall be given only from the stenographer or their employer directly to the Supervising Judge and the Special Prosecutor, no copy shall be given to the Attorney General's Office.

4. Employees of the Office of the Attorney General shall not have access to transcripts of proceedings before the Grand Jury or Supervising Judge, exhibits, or other information pertaining to the Special Prosecutor's investigation. All information related to the work of the Special Prosecutor shall be kept in the custody of the Special Prosecutor and Supervising Judge.

5. Any person, including employees of the Office of the Attorney General, who engage in any act of obstruction, intimidation or retaliation against a witness summoned by the Grand Jury in the Special Prosecutor's investigation may be prosecuted as set forth in 18 Pa.C.S.§ 4955 (relating to violation of orders) and any other applicable provisions of the Crimes Code of Pennsylvania.

6. The Special Prosecutor shall serve a copy of this Order upon the Office of the Attorney General.

7. The contents of this Order are sealed, and shall not be disclosed (either verbally or in writing) by the Office of the Attorney General to any individual outside of the Office of the Attorney General under penalty of contempt of court.

BY THE COURT:

_____

**WILLIAM R. CARPENTER,**     **J.**
**Supervising Judge**


**Copies sent on August 27, 2014**
**By First Class Mail to:**
Kathleen G. Kane, Pennsylvania Attorney General
Thomas E. Carluccio, Esquire

THIS PAGE INTENTIONALLY LEFT BLANK

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:

THE THIRTY-FIFTH STATEWIDE

INVESTIGATING GRAND JURY

: SUPREME COURT OF PENNSYLVANIA
: NO. 176 M.D. MISC. DKT. 2012
:
: MONTGOMERY COUNTY COMMON PLEAS
: M.D. 2644-2012
:
: NOTICE NO. 123

## ORDER

AND NOW, this 17th day of September, 2014, it is hereby ORDERED that the attached, filed on September 17th, 2014, be and is hereby sealed.

WILLIAM R. CARPENTER
Supervising Judge
Thirty-Fifth Statewide Investigating
Grand Jury

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:

THE THIRTY-FIVE STATEWIDE

INVESTIGATING GRAND JURY

: SUPREME COURT OF PENNSYLVANIA
: NO. 176 M.D. MISC DKT. 2012
:
: MONTGOMERY COUNTY COMMON PLEAS
: M.D. 1424-2014
:
: NOTICE NO. 123

## ORDER

AND NOW, this 17th day of September, 2014, in the exercise of its discretion after an in camera hearing and a finding of substantial evidence, this Court issued a Protective Order;

And upon consideration of the Motion for Reconsideration filed by the Office of Attorney General relating to the Order of Court issued August 27, 2014, and after Argument,

IT IS ORDERED that a further hearing related to the issuance of a protective order pursuant to 18 Pa.C.S. § 4954 shall be conducted on a date to be agreed upon by the Attorney General and the Special Prosecutor in the Chambers of the Supervising Judge in the Grand Jury suite. The subject of the hearing is allegations of obstruction, witness intimidation, and/or retaliation.

BY THE COURT:

_____
WILLIAM R. CARPENTER,          J.
Supervising Judge

Copies sent on September 17, 2014
By First Class Mail to:
Thomas E. Carluccio, Esquire
James Barker, Esquire

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:

THE THIRTY-FIFTH STATEWIDE

INVESTIGATING GRAND JURY

: SUPREME COURT OF PENNSYLVANIA
: NO. 176 M.D. MISC. DKT. 2012
:
: MONTGOMERY COUNTY COMMON PLEAS
: M.D. 2644-2012
:
: NOTICE NO. 123

## ORDER

AND NOW, this 17th day of September, 2014, it is hereby ORDERED that the attached ,

filed on September 17th, 2014, be and is hereby sealed.

_____
WILLIAM R. CARPENTER
Supervising Judge
Thirty-Fifth Statewide Investigating
 Grand Jury

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:                      :   SUPREME COURT OF PENNSYLVANIA
                                :   NO. 176 M.D. MISC DKT. 2012

THE THIRTY-FIVE STATEWIDE     :

                                  :   MONTGOMERY COUNTY COMMON PLEAS

INVESTIGATING GRAND JURY      :   M.D. 1424-2014

                                  :

                                  :   NOTICE NO. 123

## <u>ORDER</u>

AND NOW, this 17th day of September, 2014, in the exercise of its discretion after an in camera hearing and a finding of substantial evidence, this Court issued a Protective Order;

And upon consideration of the Motion for Reconsideration filed by the Office of Attorney General relating to the Order of Court issued August 27, 2014,

IT IS ORDERED that the Motion is GRANTED in part as to Paragraphs 2 and 5 of said Order, and the following persons only shall be subject to Paragraphs 2 and 5 of said Order:

1. Any person who has been sworn to Grand Jury secrecy.

2. Any person who has or had access to any Grand Jury information.

3. Any person associated with the J. Whyatt Mondesire proceedings and investigation.

Additionally, Paragraph 7 of said Order is modified to allow communication regarding the Order with counsel for a person subject to the Order, for purposes of appeal, and for any other, similar purpose required by law.

**BY THE COURT:**


_William R. Carpenter_
WILLIAM R. CARPENTER,      J.
Supervising Judge


Copies sent on September 17, 2014
By First Class Mail to:
Thomas E. Carluccio, Esquire
James Barker, Esquire

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving one copy of the foregoing Application of the Office of Attorney General for Special Relief pursuant to 42 Pa.C.S. §§ 502, 726, Pa.R.A.P. 3309 upon the persons and in the manner indicated below:

*Via U.S. First-Class Mail,*
*Postage pre-paid:*

The Honorable William R. Carpenter
Court of Common Pleas of Montgomery County
Montgomery County Courthouse
P.O. Box 311
Norristown, PA 19404-0311
(610) 278-5902
(Supervising Judge)

Thomas E. Carluccio, Esquire
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D3
Plymouth Meeting, PA 19462-2484
(484) 674-2899
(Special Prosecutor)

Ann Thornburg Weiss, Clerk of Courts
Montgomery County Clerk of Courts Office
P.O. Box 311
Norristown, PA 19404-0311
(610) 278-3346
(Clerk of Courts)

By: _____
**JAMES P. BARKER**
**Chief Deputy Attorney General**
**Attorney No. 67315**

**OFFICE OF ATTORNEY GENERAL**
**Criminal Law Division**
**Appeals & Legal Services Section**
**16th Floor-Strawberry Square**
**Harrisburg, PA 17120**
**(717) 705-0098**

**Date: September 19, 2014**

14

Filed 09/19/2014 Supreme Court Middle District
137 MM 2014

UNSEALED PER ORDER OF
THE COURT DATED
AUGUST 26, 2015

IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

IN RE: THE THIRTY-FIFTH STATEWIDE     :
INVESTIGATING GRAND JURY              :     No. ___ MM 2014
                                      :
PETITION OF:                          :     **FILED UNDER SEAL**
OFFICE OF ATTORNEY GENERAL            :

---

MOTION FOR LEAVE TO FILE APPLICATION FOR SPECIAL RELIEF UNDER SEAL

---

TO THE HONORABLE CHIEF JUSTICE AND JUSTICES OF THE SUPREME COURT OF PENNSYLVANIA:

AND NOW, comes the Pennsylvania Office of Attorney General by Kathleen G. Kane, Attorney General of the Commonwealth of Pennsylvania, and James P. Barker, Chief Deputy Attorney General, who files this Motion for Leave to File Application for Relief under Seal, and in support thereof avers as follows:

1.      Concurrent with the filing of this Motion, Petitioner, Office of Attorney General of the Commonwealth of Pennsylvania (OAG) by Kathleen Kane, Attorney General, is filing an Application for Special Relief pursuant to 42 Pa.C.S. §§ 502, 726, Pa.R.A.P. 3309.

2.      By its Application for Special Relief, OAG seeks to challenge the issuance of a Protective Order by the Supervising Judge of the Thirty-Fifth Statewide Investigating Grand Jury.

3.     Of necessity, the Application for Special Relief recites matters occurring before the Grand Jury and/or matters subject to Sealing Orders signed by the Supervising Judge of the Thirty-Fifth Statewide Investigating Grand Jury.

WHEREFORE, the Pennsylvania Office of Attorney General, through the Attorney General and undersigned counsel, respectfully requests that this Honorable Court enter an Order granting this Motion for Leave to File Application for Relief under Seal and sealing this Motion, the Application of the Office of Attorney General for Special Relief pursuant to 42 Pa.C.S. §§ 502, 726, Pa.R.A.P. 3309, and any future documents filed in this matter pending further Order of Court.

Respectfully submitted,

**KATHLEEN G. KANE**
**Attorney General**

**LAWRENCE M. CHERBA**
**Executive Deputy Attorney General**
**Director, Criminal Law Division**

By:     _____
**JAMES P. BARKER**
**Chief Deputy Attorney General**
**Attorney No. 67315**
**jbarker@attorneygeneral.gov**

**OFFICE OF ATTORNEY GENERAL**
**Criminal Law Division**
**Appeals and Legal Services Section**
**16th Floor-Strawberry Square**
**Harrisburg, PA 17120**
**(717) 705-0098**
**(Fax) (717) 783-5431**

**Date:  September 19, 2014**

2

## VERIFICATION

The facts recited in the foregoing Commonwealth's Answer to Petition for Review are true and correct to the best of my knowledge and belief. This statement is made with knowledge that a false statement is punishable by law under 18 Pa. C.S. § 4904(b).

By: _____
JAMES P. BARKER
Chief Deputy Attorney General
Attorney No. 67315

OFFICE OF ATTORNEY GENERAL
Criminal Law Division
Appeals & Legal Services Section
16th Floor—Strawberry Square
Harrisburg, PA 17120
(717) 705-0098

Date: September 19, 2014

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving one copy of the foregoing Motion for Leave to

File Application for Relief under Seal upon the persons and in the manner indicated below:

*Via U.S. First-Class Mail,*
*Postage pre-paid:*

The Honorable William R. Carpenter
Court of Common Pleas of Montgomery County
Montgomery County Courthouse
P.O. Box 311
Norristown, PA 19404-0311
(610) 278-5902
(Supervising Judge)

Ann Thornburg Weiss, Clerk of Courts
Montgomery County Clerk of Courts Office
P.O. Box 311
Norristown, PA 19404-0311
(610) 278-3346
(Clerk of Courts)

Thomas E. Carluccio, Esquire
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D3
Plymouth Meeting, PA 19462-2484
(484) 674-2899
(Special Prosecutor)

By: _____
JAMES P. BARKER
Chief Deputy Attorney General
Attorney No. 67315


OFFICE OF ATTORNEY GENERAL
Criminal Law Division
Appeals & Legal Services Section
16th Floor-Strawberry Square
Harrisburg, PA 17120
(717) 705-0098

Date: September 19, 2014

4

UNSEALED PER ORDER
OF THE COURT DATED
AUGUST 26, 2015

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:                          : SUPREME COURT OF PENNSYLVANIA
                                : NO. 137 M.D. MISC. DKT. 2014
THE THIRTY-FIVE STATEWIDE       :
                                : MONTGOMERY COUNTY COMMON PLEAS
INVESTIGATING GRAND JURY        : M.D. 1424-2014
                                :

## SEALING ORDER

AND NOW, this 24th day of September, 2014, it is hereby ORDERED, that the

attached Answers and Orders of September 24, 2014 be filed under seal with the Supreme

Court until further Order of that Court.

BY THE COURT:

_____
**WILLIAM R. CARPENTER,**          **J.**
**Supervising Judge**

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:

THE THIRTY-FIVE STATEWIDE

INVESTIGATING GRAND JURY

: SUPREME COURT OF PENNSYLVANIA
: NO. 137 M.D. MISC. DKT. 2014
:
: MONTGOMERY COUNTY COMMON PLEAS
: M.D. 1424-2014
:

## SEALING ORDER

AND NOW, this 24th day of September, 2014, it is hereby ORDERED, that the

attached Answers and Orders of September 24, 2014 be filed under seal with the Clerk of

Courts of Montgomery County until further Order of this Court.

BY THE COURT:

_____

**WILLIAM R. CARPENTER,       J.**
**Supervising Judge**

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

IN RE: THE THIRTY-FIFTH STATEWIDE   :     NO. 137 MM 2014
INVESTIGATING GRAND JURY            :
                                    :     **FILED UNDER SEAL**
V.                                  :
                                    :
                                    :
PETITION OF:                        :
THE OFFICE OF ATTORNEY GENERAL      :

### ANSWER TO THE APPLICATION OF THE OFFICE OF THE ATTORNEY GENERAL FOR SPECIAL RELIEF PURSUANT TO §§502, 726, Pa.R.A.P. 3309

TO THE HONORABLE CHIEF JUSTICE AND JUSTICES OF THE SUPREME COURT OF PENNSYLVANIA:

AND NOW, comes Thomas E. Carluccio, Esquire, Special Prosecutor for the Thirty-Fifth Statewide Investigating Grand Jury, who files this Answer to the Application of the Office of Attorney General for Special Relief Pursuant to §§502, 726, Pa.R.A.P. 3309, and in support thereof answers as follows:

### I.   PARTIES

1.   Admitted.

2.   Denied, to the extent that this Special Prosecutor has no knowledge as to what the Office of the Attorney General of the Commonwealth of Pennsylvania (OAG) knows and doesn't know about the identity of any Respondent.

### II.   JURISDICTION

3.   Admitted, in part, that Applicant has correctly cited Section 726 of the Judicial Code. Denied, in part, that the Court has jurisdiction of this matter pursuant to Section 726 of the Judicial Code.

### III.   BACKGROUND

4.   Denied, to the extent that Appendix A appears to be a writing that speaks for itself.

5.   Admitted.

6. Denied, This motion in and of itself exhibits a lack of cooperation, along with the fact that the Special Prosecutor is still awaiting the Right-To-Know Documents requested last week.

7. Admitted in part, that August 26, 2014, the Judge issued a Protective Order. All other allegations are specifically denied.

8. Admitted.

9. Denied. However, attached as Exhibit 2 under separate seal, are the notes of testimony from the hearing that was used to establish the Protective Order. Please note that the Attorney General has not been provided a copy of the hearing.

10 Admitted.

11. Admitted in part, and denied in part. The Order dated September 17, 2014 is an Order which the contents thereof speak for itself.

12. Admitted in part, and Denied, in part. The Order dated September 17, 2014 is an Order which speaks for itself. Any interpretation of the September 17, 2014 Order by the Applicant is specifically denied.

13. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

IV. TERMS OF THE PROTECTIVE ORDER

14. Admitted. The September 17, 2014, Order, was issued pursuant to 18 Pa.C.S.A. §4954.

15. Denied. The Order dated September 17, 2014, is an Order that speaks for itself. Any interpretation of the September 17, 2014 Order, by the Applicant is specifically denied.

16. Denied. The Order dated September 17, 2014, is an Order, which speaks for itself. Any interpretation of the September 17, 2014 Order, by the Applicant is specifically denied.

2

17. Denied. The Order dated September 17, 2014, is an Order, which speaks for itself. Any interpretation of the September 17, 2014 Order, by the Applicant is specifically denied.

18. Denied. The Order dated September 17, 2014, is an Order, which speaks for itself. Any interpretation of the September 17, 2014 Order, by the Applicant is specifically denied.

19. Denied. The Order dated September 17, 2014, is an Order, which speaks for itself. Any interpretation of the September 17, 2014 Order, by the Applicant is specifically denied.

20. Denied. The Order dated September 17, 2014, is an Order, which speaks for itself. Any interpretation of the September 17, 2014 Order, by the Applicant is specifically denied.

21. Denied. The September 17, 2014 Order, granting in part the Motion for Reconsideration is an Order, which speaks for itself. Any interpretation of that order by the Applicant is specifically denied.

V. ABUSE OF DISCRETION IN ISSUANCE OF THE PROTECTIVE ORDER

22. Admitted, in part and Denied in part. It is admitted that this Judge relied on 18 Pa.C.S.A. §4954 in issuing the September 17, 2014, Protective Order. The original text of that statutory section speaks for itself. Denied, to the extent that this Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

23. Admitted, in part and Denied in part. It is admitted that Commonwealth v. Sandusky, 70 A.3d. 886, 897 n. 9 (Pa.Super. 2013), sets forth the cited language. Denied, that an abuse of discretion standard is appropriate here. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have

3

testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

24.     Admitted, in part and Denied in part. It is admitted that Commonwealth v. Alicia, 92 A.3d 753, 760 (Pa. 2014), sets forth the cited language. Denied, that an abuse of discretion standard is appropriate here. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

25.     Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

26.     Denied.

27.     Denied. The Special Prosecutor is unaware of what the OAG is aware of or has knowledge of.

28.     Denied.

29.     Denied, as to the contents of the OAG's speculation.

30.     Denied. This allegation is speculation.

31.     Denied, in that the Special Prosecutor does not have sufficient knowledge to answer this averment.

32.     Denied, as a mischaractertion of the facts and this allegation is speculation.

33.     Denied, as a mischaractertion of the facts and this allegation is speculation.

34.     Denied. This allegation is speculation.

35.     Denied. This allegation is speculation.

36.     Denied. This allegation is speculation.

4

**37.** Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

**38.** Denied, as a mischarterization of the facts, and this allegation is speculation.

**39.** Denied, as a mischaracterization of the facts, and this allegation is speculation.

**40.** Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1. Furthermore, if this interpretation were to be permitted then an organized crime target would be allowed in this context to have a hearing and confront witnesses who were being protected for Gand Jury purposes.

**41.** Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

**42.** Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

**43.** Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who

5

have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

44. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

45. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

46. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

47. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

48. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

49. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who

have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

50. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

## VI. EXERCISE OF JURISDICTION

51. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

52. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

53. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

54. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

55. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way

7

for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

56. Denied. This Application for Special Relief is a transparent attempt by the Attorney General to have the Pennsylvania Supreme Court clear the way for her to release certain emails as retaliation against certain witnesses who have testified before the Grand Jury. These emails were previously subject to a stay recently lifted by Judge Krumenacker. See, Exhibit 1.

## NEW MATTER

1. The Protective Order is not a final Order. It is an interlocutory Order, which should not be the subject of an appeal. No one has been found in contempt of court for violating the Protective Order.

2. The Protective Order has served its purpose to this point. There has not been any additional problems as outlined in Exhibit 2 and in New Matter number 3.

3. Frank Fina and Mark Costanzo testified before the Grand Jury on August 26, 2014. As they walked in the door they were confronted by several OAG agents who apparently knew they were testifying that day. The agents then walked with them to the elevator muttering comments to them. The agents then rode the elevator with Costanzo and Fina to the Grand Jury Room standing nose to nose with them. They were making comments concerning Fina and Costanzo the entire time in the elevator until someone said to knock it off. They then entered the Grand Jury Room to wait to be called for testimony. While waiting in the Grand Jury Room an agent came in to the room and stared at Constanzo and asked to talk to the Special Prosecutor whereby he gave several statements disparaging Costanzo.

8

All of this information was conveyed to the Court by the Special Prosecutor prior to the issuing of the Protective Order.

4. Vacating the Protective Order may impede the unfinished work of the Special Prosecutor and Grand Jury.

**CONCLUSION**

WHEREFORE, Special Prosecutor, Thomas E. Carluccio, Esquire, respectfully requests that this Honorable Court enter an Order denying the Application for Special Relief.

Respectfully submitted,

BY: _____

**Thomas E. Carluccio, Esquire**
**Special Prosecutor for the Thirty-Fifth Statewide Grand Jury**

9

## VERIFICATION

The facts recited in the foregoing Commonwealth's Answer to Petition for Review are true and correct to the best of my knowledge and belief. This statement is made with knowledge that a false statement is punishable by law under 18 Pa. C.S. § 4904(b).

BY: _____

THOMAS E. CARLUCCIO, ESQUIRE
Attorney No. 81858

Law Office of Thomas E. Carluccio
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D3
Plymouth Meeting, PA 19462-2484
484 674-2899
(Special Prosecutor)

DATE: September 24, 2014

10

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving one copy of the foregoing Application of the Office of Attorney General for Special Relief pursuant to 42 Pa. C.S. §§ 502, 726, Pa.R.A.P. 3309 except for exhibit 2 filed under separate seal upon persons and in the manner indicated below:

*Via U.S. First-Class Mail,*

*Postage pre-paid:*

The Honorable William R. Carpenter
Court of Common Pleas of Montgomery County
Montgomery County Courthouse
P.O. Box 311
Norristown, PA 19404-0311
610-278-5902
(Supervising Judge)

James P. Barker
Office of Attorney General
Criminal Law Division
Appeals & Legal Services
16th Floor-Strawberry Square
Harrisburg, PA 17120
717-705-0098
(Chief Deputy Attorney General)

Ann Thornburg Weiss, Clerk of Court
Montgomery County Clerk of Courts Office
P.O. Box 311
Norristown, PA 19404-0311
610-278-3346
(Clerk of Courts)

BY:  _____
THOMAS E. CARLUCCIO, ESQUIRE
Attorney No. 81858

**Law Office of Thomas E. Carluccio**
**Plymouth Greene Office Campus**
**1000 Germantown Pike, Suite D3**
**Plymouth Meeting, PA 19462-2484**
**484 674-2899**
**(Special Prosecutor)**
**DATE: September 24, 2014**

11

**(EXHIBIT 1)**

Member Login: **Sign In** | **Register**   f  t  g



66° John Bolaris' Forecast »
Philadelphia, PA

**philly®com**

Search       Subm'



🏠 | News | Sports | Entertainment | Business | Opinion | Food | Lifestyle | Health | More

BREAKING NEWS VIDEO VOICES/BLOGS PHILADELPHIA NEW JERSEY POLITICS EDUCATION OPINION OBITUARIES NATION/WORLD WEATHER TRAFFIC LOTTERY

**SAVE 40%**
ON ANNUAL MEMBERSHIPS!
Use promo code AUTUMN40

From contractors to veterinarians, we can help you hire with confidence.

Angie's list.

# Kane to decide whether to release state workers' racy e-mails

[ Share ]   Tweet        Reddit      Email    31 COMMENTS



*Pennsylvania Attorney General Kathleen Kane. ( MICHAEL BRYANT / Staff Photographer, file )*


The Philadelphia Orchestra

**The Season Begins**
September 26-28

Featuring Lang Lang performing Mozart's Piano Concerto No. 17

LEARN MORE ○       www.philorch.org

Advertise Here

*Latest News Video*



**Angela Couloumbis**, *Inquirer Staff Writer*
LAST UPDATED: Saturday, September 20, 2014, 1.08 AM
POSTED: Friday, September 19, 2014, 10:45 AM



The Inquirer HARRISBURG - Pennsylvania Attorney General Kathleen G. Kane must decide whether to make public e-mails of current and former state employees - some sent over state-owned computers and accounts - that purportedly contain pornographic images, jokes, cartoons, and other private messages.

A state judge lifted a stay Friday that prevented release of the material that Kane discovered during her review of her predecessors' handling of the Jerry Sandusky child sexual-abuse case.

Renee Martin, a spokeswoman for Kane, said Friday that the office was reviewing the order by Cambria County Court Judge Norman A. Krumenacker III and would decide soon.

*Most Viewed News Stories:*


Troopers: We're closing in on suspect


4 kids killed in Pa. crash not restrained


Sexual assault charge for Philly lobbyist


Haverford project sets off Facebook fight

Several news organizations, including The Inquirer, have asked to see the e-mails under the state's Right-to-Know law.

Former Chief Deputy Attorney General Frank G. Fina, who led the Sandusky investigation, had argued to Krumenacker that because the e-mails were discovered during Kane's internal review of the investigation, which involved grand jury material, they should not be made public.

Kane's office countered that the information sought did not relate to grand jury matters and was not covered by strict grand jury secrecy rules.

It was not immediately clear why Fina was seeking a protective order. Fina, who now works for Philadelphia District Attorney Seth Williams, could not be reached for comment Friday.

Kane and Fina have for months been locked in an increasingly bitter battle, one that most recently has culminated in a special prosecutor's being appointed to investigate whether Kane's office leaked secret grand jury material in a separate case that Fina handled.

The special prosecutor has issued several subpoenas to Kane's office and others to explore how secret records became public this year about a 2009 investigation by Fina involving Philadelphia NAACP leader J. Whyatt Mondesire.

The e-mails have become an issue in the leak inquiry, with some Kane critics arguing that her office is using the threat of their release as a way to silence criticism, sources have told The Inquirer.

A person who violates grand jury secrecy rules may be found guilty of contempt of court and sentenced to up to six months in prison.

Given the tangled nature of the leak investigation, Kane might be hard-pressed to release the e-mails.

Complicating matters are Krumenacker's own words in lifting the stay Friday.

The judge wrote that the e-mails being requested do not relate to grand jury secrecy and that he therefore had no jurisdiction over whether they can be released.

But he made it clear that he believes case law makes it very difficult for Kane to make the information public. He cited court decisions that the Right-to-Know law only covers official records and that e-mails of a personal nature do not fall under that definition.

"Here, the e-mails sought are described variously as being pornographic or sexually explicit in nature, and as such do not appear to document a transaction or activity" of the Attorney General's Office, Krumenacker wrote.

The Inquirer has reported that the e-mails circulated among scores of officials, from homicide investigators in the Attorney


Police lift Poconos limits; hunt for killer goes on


JAGUAR WEST CHESTER
2014 JAGUAR $429
XF 2.0T
VIEW INVENTORY

*Also on Philly.com*

BUSINESS:


You're carrying too much personal data on your credit card

HEALTH:


Online workouts: The personal trainer you never had

SPORTS:


Williams: Birds are overworked

ENTERTAINMENT:


One way to avoid hacked nude shots? Keep your clothes on

CRAIG LABAN


Junto: One of the suburbs' top new restaurants

JOBS:


7 essential items for your job search 'toolkit'

*Stay Connected*

Get the latest Philly.com Daily Headlines newsletter delivered to your email. Sign up now!

Enter email address to sign up

Already a philly.com member?    Yes    No

*Travel Deals*




$140 & up -- Downtown D.C. Hotel Sale thru Fall, 20% Off

See all travel deals »

LISTED BY TRAVELZOO
*Some taxes, fees additional*

General's Office to state prosecutors and other officials, as well as top Pennsylvania jurists.

The e-mails were sent between 2009 and 2011, when the office was handling some of its biggest investigations, including that of Sandusky and several public corruption investigations involving the misuse of state resources for political gain.

Gov. Corbett, a Republican, was attorney general until early 2011. He was succeeded by Linda Kelly, also a Republican.

There is no indication that Corbett received or was aware of the e-mail exchanges, according to people familiar with the matter.

acouloumbis@phillynews.com

717-787-5934

@AngelasInk

**Angela Couloumbis**
*Inquirer Staff Writer*

AN INQUIRER ORIGINAL | The Inquirer

DISCOVER THE IMPROVED INQUIRER MORE YOU

LEARN MORE >

Share    Tweet         Reddit    Email    31 COMMENTS        Reprints & Permissions »

### Share this story with friends who would like it.
We recommend which of your friends would enjoy this story.

**MORE FROM THE WEB**

13 Athletes Who Are Just As Guilty As Ray Rice *(StyleBlazer)*

10 NFL Teams Who Should Have Their Names Forcibly Changed *(RantSports)*

CNN Money: How Young Millionaires Invest *(CNN Money)*

20 Legal Activities You Probably Thought Were Illegal *(RantLifestyle)*

15 Dirty Jokes We TOTALLY Missed In Beloved Films From Our Youth *(Refinery29)*

Ice Dancer Anna Semenovich Is Curvy and Not Afraid to Show It *(RantSports)*

**MORE FROM PHILLY.COM**

Shuttle buses on Media-Elwyn SEPTA line for next 10 weekends

Andy Reid's son settles in road-rage suit

"Privilege" to be white? Not quite

Bucks DA: Teacher had sex with student, 14

Camden County College union to freeholders: Rehire laid-off workers

Emotions mount on final day of Scottish campaign

**31 Comments**    Philly.com                              Login

Sort by Best                                    Share    Favorite




Guest ·
Kane looks like she visited Michael Jackson's surgeon too.


Guest ·
Our downtown Philadelphia professional workplace put a cap on those sorts of shenanigans some 15 years-ago and fired many good employees over personal correspondence, non-work related e-mails and those messages that contained questionable content



comments powered by Disqus

Commenting policy | Comments FAQ

## philly°com

News | Sports | Entertainment | Business |
Food | Lifestyle | Health

*Classifieds:*

Jobs | Cars | Real Estate | Rentals |
Marketplace | Celebrations | Print Offers
Online | Weekly Circulars

*Site Services:*

Advertise on Philly.com | Rates and Specs |
Mobile Site | Apps

## The Inquirer

The Inquirer Digital
Edition

Subscriber Services

Subscribe

Newspapers in Education

## DAILY NEWS

Daily News Digital Edition

Subscriber Services

Subscribe

*Partners:*

Philly DealYo

Parade Magazine

About Philly.com | Contact Us | Terms of Use & Privacy Statement | Copyright 2014

© Copyright 2014 Interstate General Media, LLC

UNSEALED PER ORDER OF
THE COURT DATED
AUGUST 26, 2015

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, PENNSYLVANIA

IN RE: : SUPREME COURT OF PENNSYLVANIA
: NO. 137 M.D. MISC. DKT. 2014
THE THIRTY-FIVE STATEWIDE :
: MONTGOMERY COUNTY COMMON PLEAS
INVESTIGATING GRAND JURY : M.D. 1424-2014
:

## SEALING ORDER

AND NOW, this 24th day of September, 2014, it is hereby ORDERED, that the

attached Answers and Orders of September 24, 2014 be filed under seal with the Supreme

Court until further Order of this Court.

BY THE COURT:

_____
WILLIAM R. CARPENTER, J.
Supervising Judge

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, PENNSYLVANIA

IN RE:

THE THIRTY-FIVE STATEWIDE

INVESTIGATING GRAND JURY

: SUPREME COURT OF PENNSYLVANIA
: NO. 137 M.D. MISC. DKT. 2014
:
: MONTGOMERY COUNTY COMMON PLEAS
: M.D. 1424-2014
:

## SEALING ORDER

AND NOW, this 24th day of September, 2014, it is hereby ORDERED, that the

attached Answers and Orders of September 24, 2014 be filed under seal with the Clerk of

Courts of Montgomery County until further Order of this Court.

BY THE COURT:

_____

**WILLIAM R. CARPENTER,**          **J.**
**Supervising Judge**

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

IN RE: THE THIRTY-FIFTH STATEWIDE :      NO. 137 MM 2014
INVESTIGATING GRAND JURY      :

                          :      **FILED UNDER SEAL**

            V.           :

                           :

PETITION OF:                 :
THE OFFICE OF ATTORNEY GENERAL      :

## ANSWER TO MOTION FOR LEAVE TO FILE APPLICATION FOR SPECIAL RELIEF UNDER SEAL, FILED BY THE PENNSYLVANIA OFFICE OF THE ATTORNEY GENERAL

TO THE HONORABLE CHIEF JUSTICE AND JUSTICES OF THE SUPREME COURT OF PENNSYLVANIA:

AND NOW, comes the Thomas E. Carluccio, Esquire, Special Prosecutor for the Thirty-Fifth Statewide Investigating Grand Jury, who files this Answer to the Motion for Leave to File Application for Relief Under Seal filed by the Pennsylvania Office of Attorney General, and in support thereof answers as follows:

1. Admitted.
2. Admitted in part, as to the OAG seeking to challenge the Protective Order, but it is specifically denied that the OAG's Motion for Leave to File Application for Special Relief Under Seal should be granted.
3. Denied. The Protective Order implicates matters occurring outside of the Grand Jury. The Protective Order represents an attempt to prevent retaliation, obstruction, or intimidation against Grand Jury witnesses.

WHEREFORE, Special Prosecutor, Thomas E. Carluccio, Esquire, respectfully requests that this Honorable Court enter an Order denying the Motion for Leave to File Application for Relief Under Seal.

Respectfully submitted,

By: _____

**Thomas E. Carluccio, Esquire**
**Special Prosecutor for the Thirty-**
**Fifth Statewide Grand Jury**

2

## VERIFICATION

The facts recited in the foregoing Commonwealth's Answer to Petition for Review are true and correct to the best of my knowledge and belief. This statement is made with knowledge that a false statement is punishable by law under 18 Pa. C.S. § 4904(b).

BY: _____
THOMAS E. CARLUCCIO, ESQUIRE
Attorney No. 81858

Law Office of Thomas E. Carluccio
Plymouth Greene Office Campus
1000 Germantown Pike, Suite D3
Plymouth Meeting, PA 19462-2484
484 674-2899
(Special Prosecutor)

DATE: September 24, 2014

3

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving one copy of the foregoing Application of the Office of Attorney General for Special Relief pursuant to 42 Pa. C.S. §§ 502, 726, Pa.R.A.P. 3309 except for exhibit 2 filed under separate seal upon persons and in the manner indicated below:

*Via U.S. First-Class Mail,*

*Postage pre-paid:*

The Honorable William R. Carpenter
Court of Common Pleas of Montgomery County
Montgomery County Courthouse
P.O. Box 311
Norristown, PA 19404-0311
610-278-5902
(Supervising Judge)

James P. Barker
Office of Attorney General
Criminal Law Division
Appeals & Legal Services
16th Floor-Strawberry Square
Harrisburg, PA 17120
717-705-0098
(Chief Deputy Attorney General)

Ann Thornburg Weiss, Clerk of Court
Montgomery County Clerk of Courts Office
P.O. Box 311
Norristown, PA 19404-0311
610-278-3346
(Clerk of Courts)

BY:

**THOMAS E. CARLUCCIO, ESQUIRE**
**Attorney No. 81858**

**Law Office of Thomas E. Carluccio**
**Plymouth Greene Office Campus**
**1000 Germantown Pike, Suite D3**
**Plymouth Meeting, PA 19462-2484**
**484 674-2899**
**(Special Prosecutor)**

DATE: September 24, 2014

4

UNSEALED PER ORDER OF
THE COURT DATED
AUGUST 26, 2015

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

IN RE: THE THIRTY-FIFTH STATEWIDE  : No. 137 MM 2014
INVESTIGATING GRAND JURY            :
                                    :
                                    :
                                    :
PETITION OF:   OFFICE OF ATTORNEY   :
GENERAL                             :

## ORDER

**PER CURIAM**

      **AND NOW**, this 2nd day of October, 2014, the Application for Special Relief filed by the Office of the Attorney General seeking, *inter alia*, a remand for a hearing is **DIMISSED** as moot. The Supervising Judge of the Thirty-Fifth Grand Jury has previously granted a hearing consistent with 18 Pa.C.S. § 4954 by order dated September 17, 2014.

      The Motion for Leave to File the Application for Special Relief Under Seal is **GRANTED**.

      Justice Stevens would Grant the Application for Special Relief and direct Judge Carpenter to set a hearing date forthwith.

      Justice McCaffery did not participate in the consideration or decision of this matter.